OLIVER WATSON V. STATE OF NEBRASKA.

FILED DECEMBER 31, 1923. No. 23390.

1. **Criminal Law:** INSTRUCTIONS. "Noninstruction alone on the question of evidence of good character, in the absence of a proffered instruction correctly stating the law, is not reversible error." *Sweet v. State,* 75 Neb. 263.

2. ———: MISCONDUCT OF PROSECUTING ATTORNEY. A judgment

will not ordinarily be reversed for misconduct of the prosecuting attorney in his closing argument, where the objections made by defendant to improper statements of counsel were either sustained  by the court or were properly overruled, although a reviewing court, even though the objections were sustained, if satisfied that the prejudicial effect of such statements was not or could not be removed from the mind of the jury by the direction and admonition of the trial court, will reverse a judgment of conviction so obtained.

ERROR to the district court for Otoe county:  WILLIAM M. MORNING, JUDGE.  *Affirmed.*

*D. W. Livingston,* for plaintiff in error.

*O. S. Spillman, Attorney General, and George W. Ayres, contra.*

Heard before MORRISSEY, C. J., LETTON and DAY, JJ., SHEPHERD, District Judge.

LETTON, J.

Samuel Trant and Oliver Watson, the petitioner in error, were informed against on the charge that on December 19, 1922, they stole a Ford coupé automobile, the property of John E. Gaskill, in Otoe county, Nebraska.  Watson requested a separate trial, which was granted, and a verdict of guilty was returned against him.

He assigns as error that the verdict is not supported by sufficient evidence; that the venue of the crime was not proved; that the court erred in refusing to give instruction No. 18, requested by him, and that there was misconduct of the county attorney in his argument to the jury.

The evidence shows that a Ford coupé belonging to Mr. Gaskill was stolen on the evening of December 19, 1922. Mrs. Gaskill, about 4 p. m., had left the car upon Eighth street, in Nebraska City.  When the car was taken the gasoline in it was nearly exhausted.  Several hours later a witness saw it being backed down hill by Trant on a cul-de-sac street and partly hidden among some bushes.  Trant testified to taking the car, at Watson's direction, and hiding it, as the former witness testified.  He then went up-

town to where Watson was waiting for him. Watson gave
him the money and he procured five gallons of gasoline from
a near-by garage and took it to Watson's car, which was
then driven to where the stolen car was concealed. By this
time a police officer was at the stolen car. He halted the
car with the two young men and had it taken to the police
station, where the car and the prisoners were searched.
Trant, who is 18 years of age, testified that he had become
acquainted with Watson, whose age is 29, in South Omaha;
that on the day the car was stolen Watson told him he
wanted him to go to Nebraska City with him to drive a car
back; that as they were leaving Omaha he asked him if he
could drive a car; that soon after leaving Omaha Watson
agreed to give him $25 if he would drive the car back;
that near the Platte river bridge Watson asked him to
change coats so that the toll-keeper would not be able to
recognize him as he returned; that he also handed him a
piece of wire so arranged at the ends that it could slip
over the two wires in a Ford car, thus making an electric
circuit even though the car was locked, and explained the
manner of operation to him. This wire and the keys of
the stolen car were found in Watson's car. Trant's mother,
who lives in South Omaha, also testified that Watson and
Trant were at her house on that day, and that they left
about 3 p. m. with a Ford coupé. There is other testimony
tending to establish the commission of the crime by the ac-
cused.

On the other hand, Watson testified that the first time he
ever saw Trant was at Nebraska City; that he was sitting
in his car near a garage when Trant appeared and asked
him to take five gallons of gasoline to his car. He contra-
dicts the testimony of Trant and Mrs. Trant *in toto*. He
says that on December 19, from 1 p. m. to 4:30 p. m., he
was at the residence of his employer, Dr. Smith, in South
Omaha; that he remembers the date particularly on account
of it being her birthday and he was attending a birthday
dinner; that at 4:30 p. m. he left Dr. Smith's with one
Feda, in a Ford coupé belonging to Feda; that he drove

first to the Miller hotel in Omaha, and then to his father's house at Fort Crook; that his purpose in going to Nebraska City was to visit an aunt and to sell Riley Rays headlights for automobiles. His father testifies that he drove into his yard at Fort Crook about 5 p. m. Six or seven witnesses testified to the good reputation of Watson in the vicinity of his residence, and this testimony was not impeached, nor was it much shaken by cross-examination.

It is apparent that the jury chose between these conflicting states of testimony and believed that Trant and Watson were guilty, as Trant testified. There is ample evidence to sustain the conviction, and the first assignment of error is not established.

The next assignment of error is that the venue of the crime was not proved. There is positive proof that the car was taken in Nebraska City, and Mr. Brown testified that he saw Watson in Nebraska City, Otoe county, on Seventh street, when he stopped the car in which Watson and Trant were riding.

The next two assignments of error are more serious. Instruction No. 18, which was requested by defendant and refused, is as follows: "The defendant has put his reputation for good character and being a law-abiding citizen in issue, and you are instructed that he is entitled to have the jury take into consideration this testimony in determining the probability or improbability of his having committed the crime here charged." This instruction is faulty in that it singles out the evidence as to good character and instructs the jury to consider it without telling them it should be considered together with all the other evidence in the case. It is subject to the vice of the instruction in *Sweet v. State,* 75 Neb. 263, to some extent, and is not in accordance with the instructions tendered in *McDougal v. State,* 105 Neb. 553. It would have been well for the trial court to have given an instruction on the subject in proper form, but in *Sweet v. State,* *supra,* it is said in the syllabus: "Noninstruction alone on the question of evidence of good character, in the absence of a proffered instruction correctly stating the law, is not

reversible error." In the general charge the rights of the accused were well protected and the jury told to consider all the evidence bearing on the question of the guilt or innocence of the accused.

The next assignment of error is misconduct on the part of the county attorney in his closing argument at the trial. The bill of exceptions contains eleven objections to remarks made by the county attorney, with rulings of the court upon the objections. Seven of the objections made by the accused to the statements of counsel were sustained by the trial court. Three of the others were not justified by the facts in evidence. The objection to another was overruled. The proof as to this one is as follows: "Mr. Livingston: Defendant objects to the statement of the county attorney that the defendant is not only guilty of the theft of this car, because it is not based on any evidence in the record. It is a matter for the jury to decide and not for counsel to argue. The Court: Overruled. He has the right to try to establish his theory of the case." The evidence for the state tends to prove that the accused "is not only guilty of the theft of this car," as counsel said, but that he was guilty of leading Trant into crime and deceit. We are satisfied that there was no prejudicial error in the ruling upon this remark.

It is not always possible to remove, by a direction to the jury to disregard it, the unfair and evil effect upon the minds of the jurors of unwarranted and prejudicial statements of counsel not based upon the evidence. In flagrant cases a reviewing court will reverse a judgment of conviction so obtained, even though the trial court may sustain the objections, and this the more especially in a close case. In the present case, while we cannot approve of the conduct of counsel for the prosecution in his repeated disregard of the admonitions of the trial court, we think that his conduct, considering the nature of the statements made by him and the rulings and directions of the court, was not so prejudicial to the defendant as to justify this court in granting a new trial for this reason alone.

AFFIRMED.